UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RILEY HOUSTON AND JENNIFER HOUSTON, *Plaintiffs*, | § § § § | |
| v. | § § | CIVIL ACTION NO. 25-CV-0538 |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION AND ROCKET MORTGAGE, LLC, *Defendants*. | § § § § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs initiated this case by filing an Original Petition in state court challenging the validity of their Texas Home Equity Loan under the Texas Constitution.[1] ECF 1-1. Defendants removed the case to this federal court based on diversity jurisdiction. ECF 1. Before the Court is Defendants' Motion to Dismiss for lack of subject matter jurisdiction, which has been fully briefed and is ripe for determination. ECF 30; ECF 38; ECF 42. Having considered the parties' submissions and the law, Defendants' Motion is GRANTED IN PART AND DENIED IN PART.

---

[1] The parties have consented to the jurisdiction of this Magistrate Judge for all purposes, including final judgment. ECF 40.

## I.   Background

"On or about March 25, 2021, Plaintiffs entered into a home equity loan transaction with Quicken Loans LLC in which Plaintiffs borrowed $324,800 secured by the Propery [located at 6739 Honeycrest Lane, Spring, Texas] (the 'Loan')."[2] ECF 1-1 ¶9.  The Loan is owned by Fannie Mae and the current mortgage servicer is Rocket Mortgage, LLC.  *Id.* ¶¶10-11.  The Loan closing occurred at a co-working space at 118 Vintage Park, Houston, Texas 77070.  *Id.* ¶12.  Plaintiffs allege that the co-working space is not "a lender's office, title company, or attorney's office" as required by the Texas Constitution, Article XVI, § 50(a)(6)(N).  *Id.*  Plaintiffs notified Defendant Rocket Mortgage of this defect on November 14, 2024, years after loan closing.  *Id.* ¶13.  Defendants did not cure the deficiency within 60 days. *Id.*  Plaintiffs admit that they are not in default on their mortgage loan.  ECF 38 at 4. Further, Plaintiffs fail to allege that Defendants have put them on notice of default or indicated any intent to foreclose, or that Plaintiffs have incurred actual damages.

Based on the single alleged violation of the Texas Constitution, Plaintiff sued Defendants seeking a declaration "(a). . . the Loan is not compliant with the requirements of the Texas Constitution, art. XVI, section 50(a)(6); (b) . . . violations of the Texas Constitution, art. XVI, section 50(a)(6) are uncured causing the loan to

---

[2] The Original Petition identifies the Property as 15318 Climbing Branch Drive, Houston, Texas, 77068 (ECF 1-1 ¶5), but this is clearly a mistake as the Loan documents reference the Honeycrest Lane address.  ECF 1-1 at 12, 33.

be void; (c) Defendants' time to cure violations of the Texas Constitution, art. XVI, section 50(a) has expired; and (d) . . . in Plaintiffs' favor all other matters necessary to completely resolve uncertainty in the rights, status, and legal relations in general under the Loan, Loan Assignments, Property, and Texas law." *Id.* ¶16. Plaintiffs also assert claims for quiet title and breach of contract. *Id.* ¶¶ 14-26. Defendants seek dismissal of all three claims based on lack of subject matter jurisdiction. ECF 30.

## II. Rule 12(b)(1) Motion to Dismiss Standards

A court properly dismisses a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Wingfield v. Garner*, No. 23-40547, 2025 WL 1040649, at *1 (5th Cir. Apr. 8, 2025) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)); *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014)). When there is a challenge to the Court's subject matter jurisdiction, the party asserting jurisdiction bears the burden of establishing jurisdiction exists. *Alabama-Coushatta Tribe of Tex. v. U.S.*, 757 F.3d 484, 487 (5th Cir. 2014); *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001)). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint

3

supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. U.S.*, 281 F.3d at 161.

In this case, Defendants move for dismissal based solely on the allegations in the Original Petition, to which the Texas Home Equity Security Instrument (First Lien) (ECF 1-1 at 9-29), and the Texas Home Equity Planned Unit Development Rider (ECF 1-1 at 30-34) (collectively the "Loan") are attached.[3] The Court thus decides the pending motion based on the facts asserted in the Original Petition and evidenced by the Loan.

### III. Analysis

#### A. Legal Standards

##### 1. Subject Matter Jurisdiction

Ripeness is a component of subject matter jurisdiction. *United States v. Dubuisson*, No. 24-50509, 2025 WL 2604465, at *4 (5th Cir. Sept. 9, 2025) ("'[R]ipeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable.'" (citing *United States v. Magana*, 837 F.3d 457, 459 (5th Cir. 2016))). According to Fifth Circuit precedent:

> A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical. The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' A case is generally ripe if any

---

[3] The Note referenced in the Security Agreement is not attached or incorporated into Plaintiff's definition of the Loan.

remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.

*New Orleans Public Service, Inc. v. Council of New Orleans*, 833 F.2d 583 586-87 (5th Cir. 1987).

As with any other claim, a declaratory judgment action must meet the test for ripeness. *See Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (holding "a declaratory judgment action, like any other action, must be ripe in order to be justiciable."). Applying the ripeness doctrine in the declaratory judgment context present a "unique challenge," because such actions are often brought before the actual injury is incurred. *Id.* In the declaratory judgment context, the Court must determine "[w]hether particular facts are sufficiently immediate to establish an actual controversy." *Id.*

### 2. Texas Constitutional Protections From Foreclosure on Home Equity Loans

Article XVI, § 50 of the Texas Constitution protects a homestead from foreclosure subject to eight exceptions. TEX. CONST. ART. XVI, § 50(a)(1-8); *Garofolo v. Ocwen Loan Servicing, L.L.C.,* 497 S.W.3d 477 (Tex. 2016). One of the exceptions allows foreclosure on a home equity loan as long as the loan meets *all* of the requirements set forth in § 50(a)(6). TEX. CONST. art. XVI, § 50(a)(6)(A-Q). One of the requirements for a home equity loan in § 50(a)(6) is the requirement that the loan "is closed only at the office of the lender, an attorney at law, or a title

company." TEX. CONST. ART. XVI, § 50(a)(6)(N). Another requirement for the exception to the foreclosure bar on a home equity loan is the condition that "the security instruments securing the extension of credit contain a disclosure that the extension of credit is the type of credit defined by Subsection (a)(6)[.]" TEX. CONST. ART. XVI, § 50(a)(6)(Q)(vi). If the lender or note holder fails to comply with the constitutional requirements for a home equity loan, the Texas Constitution provides that the lender/note holder "shall forfeit all principal and interest of the extension of credit" if the lender/note holder is notified by the borrower of a failure to comply with 50(a)(6) and fails to correct the failure within 60 days.[4] TEX. CONST. ART. XVI, § 50(a)(6)(Q)(x). Next, subsections (a)-(f) of § 50(a)(6)(Q)(x) list six specific ways in which the holder of the note may "cure" or correct a failure to comply and therefore avoid forfeiture of all principal and interest on the loan.[5]

---

[4] Section § 50(a)(6)(Q)(x) states:

> except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender's failure to comply [by taking corrective measures set forth in subsections (a)-(f)].

TEX. CONST. ART. XVI, § 50(a)(6)(Q)(x).

[5] The six corrective measures listed in subsections (a)-(f) of § 50(a)(6)(Q)(x) are:

> (a) paying to the owner an amount equal to any overcharge paid by the owner under or related to the extension of credit if the owner has paid an amount that exceeds an amount stated in the applicable Paragraph (E), (G), or (O) of this subdivision;

### 3. Case Law Interpreting Texas Constitutional Protections From Foreclosure

In *Garofolo v. Ocwen Loan Servicing, L.L.C,* the Texas Supreme Court made several significant rulings regarding § 50(a) of the Texas Constitution in the context of a home equity loan. The *Garofolo* case reached the Texas Supreme Court when it accepted and answered two certified questions presented by the Fifth Circuit Court of Appeals: (1) Does the Texas Constitution provide a borrower on a home equity loan with a constitutional right to forfeiture? or, alternatively, (2) is the forfeiture remedy available through a breach-of-contract action under the facts of the case? *Id* at 475.

---

(b) sending the owner a written acknowledgement that the lien is valid only in the amount that the extension of credit does not exceed the percentage described by Paragraph (B) of this subdivision, if applicable, or is not secured by property described under Paragraph (H) of this subdivision, if applicable;
(c) sending the owner a written notice modifying any other amount, percentage, term, or other provision prohibited by this section to a permitted amount, percentage, term, or other provision and adjusting the account of the borrower to ensure that the borrower is not required to pay more than an amount permitted by this section and is not subject to any other term or provision prohibited by this section;
(d) delivering the required documents to the borrower if the lender fails to comply with Subparagraph (v) of this paragraph or obtaining the appropriate signatures if the lender fails to comply with Subparagraph (ix) of this paragraph;
(e) sending the owner a written acknowledgement, if the failure to comply is prohibited by Paragraph (K) of this subdivision, that the accrual of interest and all of the owner's obligations under the extension of credit are abated while any prior lien prohibited under Paragraph (K) remains secured by the homestead; or
(f) if the failure to comply cannot be cured under Subparagraphs (x)(a)-(e) of this paragraph, curing the failure to comply by a refund or credit to the owner of $1,000 and offering the owner the right to refinance the extension of credit with the lender or holder for the remaining term of the loan at no cost to the owner on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with this section or on terms on which the owner and the lender or holder otherwise agree that comply with this section;

First, the Texas Supreme Court held that § 50(a) of the Texas Constitution "simply describes what a home-equity loan must look like if a lender wants the option to foreclose on a homestead upon borrower default." 497 S.W.3d at 478. Further, the Court wrote that § 50(a) creates only one constitutional right: "freedom from forced sale to satisfy debts other than those described in its exceptions." *Id.* In addition, the Texas Supreme Court determined that the protections of § 50(a) "only assume constitutional significance when their absence in a loan's terms is used as a shield from foreclosure." *Id.* In summary, The Texas Supreme Court in *Garofolo* answered the certified question "Is there a constitutional right to forfeiture?" in the negative and clearly stated that "[§] 50(a) simply has no applicability outside of foreclosure." *Id.* at 479.

*Garofolo* also answered the second certified question, i.e., "Can a borrower seek forfeiture through a breach of contract claim based on the alleged violation of § 50(a) without pleading actual damages? in the negative. *Id.* Garofolo's note incorporated the constitutional requirement to deliver a release of lien and the language of the Texas Constitution's forfeiture provision. Garofolo provided notice to Ocwen of its failure to deliver a release of lien, and Ocwen failed to cure within the 60 day period. Garofolo acknowledged that she had not suffered any damages from Ocwen's failure to deliver the release of lien, but sought the forfeiture remedy which had been incorporated into the loan documents. The question to the Texas

8

Supreme Court was whether the constitutional forfeiture remedy, which had been incorporated into the loan documents, was an available remedy for breach of contract where Garofolo had not suffered any actual damages. The Texas Supreme Court explained that if a lender cannot cure its constitutional non-compliance by performing one of the six corrective measures listed in § 50(a)(6)(Q)(x)(a)-(f), the remedy of "forfeiture is simply unavailable." *Id.* at 482; *see also Staub v. BBVA USA*, Civil Action No. 05-23-00890, 2024 WL 4647554, *6-7 (Tex. App. —Dallas (Nov. 1, 2024, pet. granted) (holding that the forfeiture remedy was not available in breach of contract action because use of an improper interest rate could not be corrected by any of the six corrective measures set forth in § 50(a)(6)(Q)(x)). Thus, in order to maintain a breach of contract claim based on a § 50(a) violation, "Garofolo must show actual damages . . . or seek some other remedy, such as specific performance." *Id.*

On the same day it delivered the *Garofolo* opinion, the Texas Supreme Court delivered its opinion in *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542 (Tex. 2016). In *Wood*, the Texas Supreme Court addressed: (1) whether a statute of limitations applies to an action to quiet title where the lien securing a home-equity loan fails to comply with the parameters set forth in the Texas Constitution; and (2) whether the petitioners in that case were entitled to a declaration that respondents forfeited all principal and interest on the underlying loan. *Id.* The Court reiterated

the holdings in *Garofolo* that § 50(a) does not create constitutional rights beyond a defense to foreclosure, and that borrowers may, in some cases, obtain the forfeiture remedy via a breach of contract action if the terms from the Texas Constitution are included in the loan documents. *Id.* at 546. The *Wood* opinion, however, addressed an issue not before the *Garofolo* court, specifically: whether a constitutionally noncompliant lien is void versus voidable; and relatedly, whether the statute of limitations provides a defense to a quiet title action involving a constitutionally noncompliant lien. *Id.*

Section 50(c) declares that no lien on a homestead "shall ever be valid unless it secures a debt described by this section . . .." TEX. CONST. art. XVI, § 50(c). Based on this language, the *Wood* Court held that a home equity loan that fails to comply with the requirements of § 50(a) is void until cured, not merely voidable. 505 S.W.3d at 549. In *Wood*, the Texas Supreme Court also held that because § 50(c) renders a constitutionally noncompliant lien void until cured, the statute of limitations does not bar a quiet title claim on an uncured, constitutionally noncompliant lien. *Id.* at 551. However, the *Wood* court's holding that the borrowers could pursue a quiet title action did not extend to their claim for a declaration that they were entitled to forfeiture of all principal and interest paid on the noncompliant home equity loan. The *Wood* court held that the declaration for the remedy of forfeiture was foreclosed by the holding in *Garofolo*. While the quiet

10

title action was based on section 50(c), the declaration for constitutional forfeiture relied upon a constitutional cause of action under section 50(a). *Garofolo* holds that the forfeiture remedy in 50(a) provides a defense to a foreclosure action on a constitutionally noncompliant home equity lien but does not provide any other substantive rights. Therefore, in the absence of the threat of foreclosure, the forfeiture provision could only be enforced through a breach of contract action which requires actual damages.

 A few years later, in an unpublished opinion, the Fifth Circuit signaled a dim view of a homeowner's action invoking "§ 50(a)(6)(N) as an offensive means to receive a free home; not as a defensive provision to prevent coercion." *Dill v. Fed. Home Loan Mortg. Corp.*, No. 21-20533, 2022 WL 1532634, at *1 (5th Cir. May 16, 2022). In *Dill,* the Fifth Circuit wrote that the constitutional provision regarding the proper location for closing "does not serve as a weapon for refinancing homeowners who are not in default or threat of foreclosure to get a free loan." *Id.* (citing *Garofolo*, 497 S.W.3d at 478). Significantly, the Fifth Circuit also upheld the jury's finding that the homeowner "falsely signed the closing documents with an intent to deceive" because the lender "had no means of knowing where Dill signed the documents" and "relied on Dill's *sworn* misrepresentation to their detriment." *Id.* at 2 (emphasis in original).

In December 2024, the Houston 14th District Court of Appeals issued its decision in *Est. of McMahon v. Fed. Nat'l Mortg. Ass'n*, No. 14-23-00707-CV, 2024 WL 5051215, at *1 (Tex. App.—Houston [14th Dist.] Dec. 10, 2024), pet. denied), a case involving facts similar to those at hand. McMahon closed on a home equity loan "at a Regus office-share conference room," purportedly the office of "Attorney Carter." *Id.* Three years later, McMahon sent the defendants a notice that the loan violated the Texas Constitution because it was not signed at a lender's office, title company, or attorney's office. *Id.* Defendants did not and could not cure the failure to sign in the office of a lender, attorney or title company, and in February 2021 McMahon sued, asserting claims for declaratory relief, breach of contract, and quiet title. *Id.*

The Texas Court of Appeals raised the issue of subject matter jurisdiction sua sponte. *Id.* at *3. Noting that "a declaratory judgment is appropriate only if a justiciable controversy exists concerning the rights and status of the parties and the controversy will be resolved by the declaration sought," the court held the request for declaratory relief presented no justiciable controversy, or in other words was not ripe, "because foreclosure had not occurred nor had Lenders attempted foreclosure." *Id.* (citing *Garofolo*, 497 S.W.3d at 479). However, the *McMahon* court found the trial court had jurisdiction over the breach of contract claim. *Id.* at *4. It also held the trial court did not err in granting summary judgment to the lenders because

12

plaintiff failed to demonstrate actual damages as a result of the alleged non-compliance with § 50(a)(6)(N), or that the forfeiture provision in the loan documents constituted a liquidated damages provision. *Id.*

### B.    Plaintiffs' Claims in this Case

Defendants here argue that none of Plaintiffs' claims—for declaratory judgment, quiet title, or breach of contract—are ripe. ECF 30. Defendants also argue that Plaintiffs cannot circumvent *Garofolo* by characterizing the terms of a forfeiture provision in the Loan as a liquidated damages provision. *Id.* at 8-9. The Court addresses each claim independently.

#### 1.    Defendants' Motion to Dismiss Plaintiffs' declaratory judgment claim is granted.

Simply put, Plaintiffs seek a declaration that their Home Equity Loan violates Texas Constitution, art. XVI, section 50(a)(6)(N). ECF 1-1 ¶¶14-16 and at 8. However, "[§] 50(a) simply has no applicability outside of foreclosure." *Garofolo*, 497 S.W.3d at 479. As discussed above, *Garofolo* held:

> [t]he constitution guarantees freedom from forced sale of a homestead to satisfy the debt on a home-equity loan that does not include the required terms and provisions—nothing more.

*Id.* at 484. Therefore, a claim seeking a declaration that a home equity loan violated § 50(a)(6) is not ripe outside the context of foreclosure. This result is further supported by the reasoning in *Estate of McMahon* in which, applying *Garofolo,* the Texas Court of Appeals held the plaintiff's claim for declaratory relief was unripe

13

"because foreclosure had not occurred nor had Lenders attempted foreclosure." 2024 WL 5051215, at *1.

Plaintiffs here fail to allege that Defendants have taken any steps toward foreclosure on the Property. *See, generally,* ECF 1-1. Therefore, Defendants' Motion to Dismiss the declaratory judgment claim is granted and the claim is dismissed without prejudice for lack of subject matter jurisdiction.[6]

### 2. Defendants' Motion to Dismiss Plaintiffs' quiet title claim is denied.

Plaintiffs seek a judgment for quiet title precluding Defendants from interfering with their interest in the Property. ECF 1-1 ¶¶17-20 and at 8. The elements of a quiet title action under Texas law are:

> (1) the plaintiff has an interest in a specific property; (2) title to the property is affected by the defendant's claim; and (3) the defendant's claim, although facially valid, is invalid or unenforceable. A suit to quiet title is an equitable proceeding, and the principle issue in such suit is 'the existence of a cloud on the title that equity will remove.'

*Roberson v. Odom*, 529 S.W.3d 498, 502 (Tex. App.—Texarkana 2017, no pet.) (citations omitted). As with the declaratory judgment claim, Plaintiffs do not seek monetary damages in connection with this claim. Defendants argue, again relying on *Garofolo*, that this claim is not ripe because there has been no attempted foreclosure. ECF 30 at 6-7. However, Defendants' argument overlooks the

---

[6] Plaintiffs all but concede this result by focusing almost exclusively on their quiet title and breach of contract claims in their Response. *See* ECF 38.

14

distinction between a claim seeking a declaration of a violation under section 50(a) of the Texas Constitution, and a claim seeking to adjudicate the validity of an lien under section 50(c).

As to Plaintiffs' quiet title claim, the Texas Supreme Court's opinion in *Wood* is controlling. Because § 50(c) provides that no "lien on the homestead shall ever be valid unless it secures a debt described by this section," the *Wood* Court held that a constitutionally noncompliant lien is void, not merely voidable. 505 S.W.3d at 549. To paraphrase the reasoning in *Wood*: if the Houstons accurately allege that they did not close the loan in the office of a lender, title company, or attorney, the lien on their homestead does not "secure a debt described by this section," and therefore the lien is not valid. *See id.* at 550. In *Wood*, plaintiffs waited nearly eight years to complain about their loan's failure to comply with § 50(a)(6). Nothing in the *Wood* opinion indicates the defendants had attempted to foreclose before the plaintiffs filed suit. Although *Wood* specifically held the statute of limitations cannot bar a quiet title action involving a void lien, the holding necessarily requires that a quiet title action involving a void lien is ripe even absent a threat of foreclosure. Therefore, Defendants' Motion to Dismiss the quiet title claim is denied.

### 3. Defendants' Motion to Dismiss Plaintiffs' breach of contract claim is granted.

The Security Instrument in this case incorporates the requirements of § 50(a)(6) and contains a provision for the remedy of forfeiture.[7] Plaintiffs assert that Defendants breached the Loan, entitling them to forfeiture, because, after notice, Defendants did not cure the alleged violation of § 50(a)(6)(N) as required by § 50(a)(6)(Q)(x). ECF 1-1 ¶¶21-26. Defendants argue this claim is not ripe because there has been no effort to foreclose and therefore Plaintiffs have suffered no actual injury. Defendants further argue the forfeiture provision is not a liquidated damages provision. ECF 30 at ¶¶17-20.

The elements of a breach of contract claim under Texas law are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex.App.—

---

[7] The Security Instrument provides in relevant part:

> Except as otherwise required by Applicable Law, Lender shall forfeit all principal and interest of the Extension of Credit only if: (a) Lender receives said notice, the failure to comply may be corrected by one of the methods set forth in Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution, and Lender fails to correct the failure to comply within sixty (60) days after it receives the notice; . . .

ECF 1-1 at 23.

Houston [14th Dist.] 2005, pet. denied); *Est. of McMahon v. Fed. Nat'l Mortg. Ass'n*, No. 14-23-00707-CV, 2024 WL 5051215, at *4 (Tex. App.—Houston [14th Dist.] Dec. 10, 2024), pet. denied).

*Garofolo* recognized that plaintiffs may state a claim for a contractual forfeiture remedy by showing: (1) their loan incorporates the requires of § 50(a); (2) plaintiffs notified the lender of a § 50(a) violation; (3) the lender failed to cure the deficiency in one of the ways listed in § 50(a)(6)(Q)(x); and (4) actual or liquidated damages. 497 S.W.3d at 484. Plaintiffs do not allege actual damages and instead argue the forfeiture provision in the Loan is a liquidated damages provision.

Because actual damages are not required if a plaintiff pleads liquidated damages, the Court rejects Defendants' argument that Plaintiffs claims are not ripe because there has been no foreclosure. Nonetheless, Plaintiffs fail to state a breach of contract claim as recognized by *Garofolo* because they fail to allege how the failure to close at a constitutionally required location could be cured by one of the actions listed in § 50(a)(6)(Q)(x). In their Response, Plaintiffs rely on the catch-all provision of § 50(a)(6)(Q)(x)(f).[8] ECF 38 at 9. However, "subsection (f) cannot

---

[8] Section 50(a)(6)(Q)(x)(f) provides:

> if the failure to comply cannot be cured under Subparagraphs (x)(a)-(e) of this paragraph, curing the failure to comply by a refund or credit to the owner of $1,000 and offering the owner the right to refinance the extension of credit with the lender or holder for the remaining term of the loan at no cost to the owner on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with this

17

apply to every deficiency not addressed by the other five corrective measures because the forfeiture provision still assumes performance will actually correct the underlying complaint." *Garofolo*, 497 S.W.3d at 483. The remedy in subsection (f), which calls for payment of $1,000 and refinancing on the original terms, cannot cure the original failure to close at one of the locations specified in § 50(a)(6)(N). This result is supported by the post-*Garofolo* decision *Staub v. BBVA USA*, 726 S.W.3d 506 (Tex. App.—Dallas 2024, pet granted), currently under review by the Texas Supreme Court. In holding that forfeiture was not an available remedy for the *Staub* plaintiffs, the Texas appellate court reiterated that forfeiture is an available remedy only if one of the six corrective measures in subparagraph 50(a)(6)(Q)(x) could actually correct the underlying problem. *Id.* at 511-512 (citing *Garofolo*, 497 S.W.3d at 483).

Moreover, *Garofolo* recognized that a *post-origination* breach of § 50(a) requirements may give rise to a breach-of-contract claim for forfeiture. *Id*. (citing *Garofolo*, 497 S.W.3d at 479-84). But the parties cite no Texas precedent authorizing forfeiture as a breach of contract remedy when the loan failed to comply with § 50(a) *at origination*. The court did not address this issue in *Estate of McMahon* because it dismissed plaintiff's breach of contract claim for failing to

---

section or on terms on which the owner and the lender or holder otherwise agree that comply with this section[.]

18

plead actual or liquidated damages. 2024 WL 5051215, at *4. Limiting the remedy of forfeiture to breach of contract claims alleging a *post-origination* breach is consistent with *Woods*' holding that a constitutionally noncompliant home-equity loan is void, not voidable. 505 S.W.3d at 549 (citing TEXAS CONSTITUTION, ART. XVI § 50(c)). In other words, non-compliance *at origination* results in a void lien that has no effect unless non-compliance is cured by one of the six corrective actions listed § 50(a)(6)(Q)(x). Although Plaintiffs' breach of contract claim alleges "the loan is a valid contract by offer and acceptance," (ECF 1-1 ¶22), they simultaneously seek a declaration that Loan is void (ECF 1-1 ¶16). This is not mere alternative pleading. Because Plaintiffs here allege the Loan was breached *at origination* by failing to comport with the requirements of the Texas Constitution as incorporated into the Loan documents, they cannot demonstrate a valid contract entitling them to forfeiture as a remedy for breach. For these reasons, Plaintiffs' breach of contract claim is dismissed.

### IV. Conclusion and Order

For the reasons discussed above, it is

ORDERED that Defendants' Motion to Dismiss Plaintiffs' declaratory judgment and breach of contract claims is GRANTED. It is further

ORDERED that Defendants' Motion to Dismiss Plaintiffs' quiet title claim is DENIED. It is further

ORDERED that the parties shall confer and submit an agreed, if possible, Scheduling and Docket Control Order to govern this case going forward.

Signed on February 12, 2026, at Houston, Texas.

Christina A. Bryan<br>
United States Magistrate Judge